IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMAR WILLIAMS, | ) | 4:07CV3138 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| UNKNOWN O. FLYNN, Officer, | ) | |
| Individual and official capacities, and | ) | |
| UNKNOWN BERRYHILL, Officer, | ) | |
| Individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Brendan O'Flynn's[1] ("O'Flynn") Motion for Summary Judgment. (Filing No. 21.)  As set forth in this Memorandum and Order, Defendant's Motion is granted.

## I.   BACKGROUND

Plaintiff Jamar Williams ("Williams") filed his Complaint in this matter on May 29, 2007. (Filing No. 1.)  Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and, liberally construed, alleges that Defendant violated Plaintiff's Fourth Amendment right to be free from warrantless entry of his mother's home. (Filing No. 1 at CM/ECF pp. 1-2.)  Initially, Plaintiff sought relief against two Defendants, but failed to effect service of process on Defendant Unknown Berryhill ("Berryhill").

---

[1]It appears from the documents submitted by Defendant that "Unknown O. Flynn" is actually Officer Brendan O'Flynn. (Filing No. 23 at CM/ECF p. 1.)  For accuracy's sake, the court refers to the only remaining Defendant by his actual name, Brendan O'Flynn.  The Clerk of the court is directed to change the name of the remaining Defendant in the court's records.

(Filing No. 13.)  Therefore, Defendant Berryhill was dismissed from this action on December 4, 2007.  (Filing No. 18.)

The only remaining Defendant, O'Flynn, filed his Motion for Summary Judgment on February 19, 2008.  (Filing No. 21.)  Along with his Motion, O'Flynn also filed an Index of Evidence and Brief in Support.  (Filing Nos. 22 and 23.) Despite having more than three months in which to do so, Plaintiff did not file an opposition or any other response to O'Flynn's Motion.  (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law."  NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts."  NECivR 56.1(b)(1).  Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition.  *Id.*  "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response."  *Id.*

O'Flynn has submitted a statement of material facts in accordance with the court's Local Rules.  However, Plaintiff has not submitted any "concise response" to those facts.  Further, Defendant submitted evidence which was properly authenticated by affidavit.  Plaintiff has not.  This matter is deemed fully submitted and the material facts set forth by O'Flynn are "deemed admitted" due to Plaintiff's failure to controvert those facts.

## II.    RELEVANT UNDISPUTED FACTS

1.    Since March 2005, Defendant O'Flynn has been a police officer employed by the Omaha, Nebraska Police Department. (Filing No. 22-3, Attach. 2, at CM/ECF p. 1.)

2.    On April 30, 2007, at approximately 8:15 a.m., O'Flynn and Berryhill each responded to a disturbance call at 3048 Redick Avenue in Omaha, Nebraska. The victim, Tammy Mitchell ("Mitchell"), informed O'Flynn and Berryhill that she encountered a black male as he was walking along the side driveway towards the back of her friend's house. (*Id.*; Filing No. 22-4, Attach. 3, at CM/ECF p. 1.)

3.    On April 30, 2007, Mitchell was an off-duty Omaha, Nebraska police officer. (Filing No. 22-2, Attach. 1, at CM/ECF p. 1.)

4.    The area of 30th and Redick Avenue in Omaha, Nebraska, is known for gang activity. (Filing No. 22-2, Attach. 1, at CM/ECF p. 3; Filing No. 22-3, Attach. 2, at CM/ECF p. 2; Filing No. 22-4, Attach. 3, at CM/ECF p. 2.)

5.    Mitchell indicated to O'Flynn and Berryhill that she was suspicious because she knew that the backyard at 3048 Redick Avenue is enclosed and there is no alleyway behind the house. Mitchell stated that she asked the man if she could help him, and he quickly asked if she wanted her lawn cut. (Filing No. 22-2, Attach. 1, at CM/ECF p. 1; Filing No. 22-3, Attach. 2, at CM/ECF pp. 1-2; Filing No. 22-4, Attach. 3, at CM/ECF pp. 1-2.)

6.    Mitchell declined and asked the man for his name. At that point, he turned around and walked away. Mitchell watched as the man walked across Redick Avenue and entered into the house at 3055 Redick Avenue. (Filing No. 22-2, Attach.

1, at CM/ECF p. 1; Filing No. 22-3, Attach. 2, at CM/ECF p. 2; Filing No. 22-4, Attach. 3, at CM/ECF p. 2.)

7.      After telling the officers about her encounter, Mitchell told the officers that she recalled a prior encounter with the male while she was on duty and that she recalled his vehicle. (Filing No. 22-2, Attach. 1, at CM/ECF pp. 1-2; Filing No. 22-3, Attach. 2, at CM/ECF p. 2; Filing No. 22-4, Attach. 3, at CM/ECF p. 2.)

8.      O'Flynn ran a search for the vehicle in his cruiser, and the name "Johnny Chatmon" came up along with several outstanding warrants for his arrest. (Filing No. 22-2, Attach. 1, at CM/ECF p. 2; Filing No. 22-3, Attach. 2, at CM/ECF p. 2.)

9.      In order to conduct further investigation, O'Flynn and Berryhill walked across the street to 3055 Redick Avenue.  The officers spoke to the owner of that home who claimed that no one was at home other than her nephew and that Johnny Chatmon was not in the residence. (Filing No. 22-2, Attach. 1, at CM/ECF p. 2; Filing No. 22-3, Attach. 2, at CM/ECF p. 2; Filing No. 22-4, Attach. 3, at CM/ECF p. 2.)

10.     The owner's nephew, Nelson Brooks, told O'Flynn that Johnny Chatmon was at the house earlier but was not presently at the house. (Filing No. 22-3, Attach. 2, at CM/ECF p. 2.)

11.     As O'Flynn and Berryhill were walking away to leave the residence, a black male came to the doorway of the house and demanded to know what the officers were doing at the house.  The man appeared hostile and extremely angry. (Filing No. 22-3, Attach. 2, at CM/ECF pp. 2-3; Filing No. 22-4, Attach. 3, at CM/ECF pp. 2-3.)

12.     O'Flynn and Berryhill were surprised because they had just been told no one other than Nelson Brooks was in the house.  (Filing No. 22-3, Attach. 2, at CM/ECF p. 3; Filing No. 22-4, Attach. 3, at CM/ECF p. 3.)

13.     O'Flynn walked back up to the front porch to determine if the man was Johnny Chatmon.  When O'Flynn reached the front porch, he asked the man for his name. The male responded by asking O'Flynn "[w]hat's your name?" O'Flynn again demanded that the man identify himself.  (Filing No. 22-3, Attach. 2, at CM/ECF p. 3; Filing No. 22-4, Attach. 3, at CM/ECF p. 3.)

14.     The man again refused to give his name and began yelling profanities at the officers, such as "I don't have to give you my fucking name!"  Because the man refused to give his name and was acting extremely hostile and agitated, O'Flynn reasonably believed that the male was Johnny Chatmon who had outstanding warrants for his arrest.  The male was later identified as Williams. (Filing No. 22-3, Attach. 2, at CM/ECF p. 3; Filing No. 22-4, Attach. 3, at CM/ECF p. 3.)

15.     O'Flynn requested that Plaintiff step outside of the doorway of house onto the porch so that he could continue his investigation. Plaintiff continued yelling profanities. O'Flynn and Berryhill became concerned that his yelling and aggressive demeanor would incite violence in other individuals who may have been in the residence.  (Filing No. 22-3, Attach. 2, at CM/ECF p. 3; Filing No. 22-4, Attach. 3, at CM/ECF p. 3.)

16.     When Plaintiff did not respond to O'Flynn's request, O'Flynn then reached for Plaintiff's arm to prevent him from leaving and to detain him in order to finish the investigation. Plaintiff pulled away and fled into the house. At this point, O'Flynn and Berryhill entered into the living room/entryway of the house in pursuit of Plaintiff. (Filing No. 22-3, Attach. 2, at CM/ECF p. 3; Filing No. 22-4, Attach. 3, at CM/ECF p. 3.)

17.     Plaintiff continued to yell profanities as he eluded the officers in the house.  Plaintiff immediately ran back outside of the house through the front door and stopped on the front porch.  O'Flynn was then able to handcuff Plaintiff and determine his identity.  (Filing No. 22-3, Attach. 2, at CM/ECF pp. 3-4; Filing No. 22-4, Attach. 3, at CM/ECF pp. 3-4.)

18.     Plaintiff was charged with disorderly conduct and obstructing an officer. He was cited and released at the scene.  (Filing No. 22-3, Attach. 2, at CM/ECF p. 4; Filing No. 22-4, Attach. 3, at CM/ECF p. 4.)

## III.    ANALYSIS

### A.    Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*  Essentially the test is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.      Plaintiff's Fourth Amendment Claim Against O'Flynn

Liberally construed, Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendant violated Plaintiff's Fourth Amendment right to be free from warrantless entry into his mother's home in order to arrest him. (Filing No. 1 at CM/ECF pp. 1-2.)  As set forth below, Defendant O'Flynn was engaged in a "hot pursuit" of Plaintiff, justifying his entry into Plaintiff's home.  Therefore, no Fourth Amendment violation occurred and Defendant is entitled to summary judgment.

Generally, "[t]he Fourth Amendment protects citizens from unreasonable searches and seizures." *United States v. Cunningham*, 133 F.3d 1070, 1072 (8th Cir. 1998), *cert. denied*, 523 U.S. 1131 (1998).  In addition, the "the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980).  Stated another way, law enforcement officials may not enter a home absent a warrant or exigent circumstances. *United States v. Vance*, 53 F.3d 220, 222 (8th Cir. 1995).  "Exigent circumstances exist if an objectively reasonable officer on the scene would have sufficient grounds to believe an exigency existed." *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir. 2006) (citing *United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005)).  Exigent circumstances "typically involve a threatened life, imminent escape of a suspect or the destruction of evidence," but an exigency may also exist when there is a "compelling need for official action and there is no time to secure a warrant." *Id.* (quotation and citation omitted).  "Unexpected and dangerous events that arise during an arrest can create exigent circumstances that justify law enforcement officers entering a residence in order to protect themselves from any additional and unknown threats." *Id.* (quoting *United States v. Hill*, 430 F.3d 939, 941 (8th Cir. 2005).

A particular exigent circumstance in which the warrantless entry into a private residence does not violate the Fourth Amendment is where police officers are engaged in a "hot pursuit." *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *Schmidt*, 403 F.3d at 1013-15 ("[H]ot pursuit can, without more, justify a warrantless entry.").[2]  Where an individual voluntarily comes to the doorway of his private residence, and exposes himself "to public view, speech, hearing, and touch as if [he] had been standing completely outside" the house, there is no expectation of privacy and no Fourth Amendment protection.  *Santana*, 427 U.S. at 42.  Thus, when a suspect is in a public area, such as the doorway of his private residence, when the police first sought to arrest him, he "may not thwart an otherwise proper arrest" by retreating from the doorway into the home.  *Id.* at 43; *see also Schmidt*, 403 F.3d at 1014.  Simply put, the "enforcement of criminal laws" is not "a children's game of tag where one is 'safe' if one reaches 'home' before being tagged by an officer." *Schmidt*, 403 F.3d at 1014.

Here, the undisputed facts clearly show that Defendant O'Flynn's brief entry into Plaintiff's residence was as a result of a "hot pursuit."[3]  Indeed, it is undisputed that O'Flynn, Berryhill, and Mitchell were looking for an individual "Johnny Chatmon" and that Mr. Chatmon had "several outstanding warrants for his arrest." (Filing No. 22-2, Attach. 1, at CM/ECF p. 2; Filing No. 22-3, Attach. 2, at CM/ECF p. 2; Filing No. 22-4, Attach. 3, at CM/ECF p. 2.)  Upon investigation of a "suspicious male" Defendant O'Flynn questioned a female owner of a residence at 3055 Redick Avenue in Omaha, Nebraska.  (Filing No. 22-3, Attach. 2, at CM/ECF

---

[2]"Hot pursuit means some sort of a chase, but it need not be an extended hue and cry in and about the public streets."  *Santana*, 427 U.S. at 42-43 (quotations omitted).

[3]While it is unclear whether Plaintiff actually had an expectation of privacy in the residence at 3055 Redick Avenue, in resolving all inferences in Plaintiff's favor, the court assumes he did.

p. 2.)  After being told that Mr. Chatmon was not inside the residence and that only one other individual was at the residence, Defendant O'Flynn questioned that other individual, Nelson Brooks, on the front porch.  (*Id.*)  During the questioning of Mr. Brooks, an "extremely angry and hostile" unidentified man (who was later identified as Plaintiff) came and stood "in the doorway" of the residence.  (*Id.*)  Because Defendant O'Flynn was previously told that nobody else was in the residence, he was surprised and because of the unidentified man's "elusiveness, demeanor and statements," O'Flynn thought the individual was Johnny Chatmon and that others may be in the house.  (*Id.* at CM/ECF p. 3.)

Plaintiff yelled profanities at Defendant O'Flynn and refused to identify himself.  (*Id.*)  Defendant O'Flynn approached the doorway in which Plaintiff was standing and Plaintiff refused to comply with O'Flynn's requests.  O'Flynn attempted to take Plaintiff's arm "to prevent him from leaving to detain him," but Plaintiff "pulled away and began to flee back into the house."  Defendant O'Flynn followed Plaintiff into the house "for several seconds" and ultimately detained and arrested Plaintiff outside on the front porch after Plaintiff ran back outside.  (*Id.* at CM/ECF pp. 3-4.)  After being placed in handcuffs and in a police cruiser, Plaintiff identified himself for the first time.  He was given citations for disorderly conduct and obstructing an officer and was released.  (*Id.* at CM/ECF p. 4.)  Plaintiff was in a public place, the doorway of his residence, and thereafter attempted to thwart Defendant O'Flynn's investigation/arrest by retreating into his house.  Defendant O'Flynn's conduct is specifically permitted under the Fourth Amendment.  As such, O'Flynn committed no constitutional violation and Plaintiff's claims against Defendant O'Flynn are dismissed.

IT IS THEREFORE ORDERED that:

1.      The Clerk of the Court shall change the name of Defendant "Unknown O. Flynn" in the court's records to "Brendan O'Flynn."

2.      Defendant's Motion for Summary Judgment (filing no. 21) is granted.

3.      A separate judgment will be entered in accordance with this Memorandum and Order.

4.      The Final Pretrial Conference, scheduled for June 13, 2008 at 9:00 a.m. is cancelled.  The Clerk of the court shall provide Magistrate Judge Piester with a copy of this Memorandum and Order.

June 10, 2008.                              BY THE COURT:


                                            s/ Joseph F. Bataillon
                                            Chief United States District Judge